Good morning, one and all. Our first case of the morning is 118170, the village of Vernon Hills v. William Heelan. Are you ready to proceed? I believe ready. Thank you. Madam Chief Justice, members of the court, good morning. My name is Keith Hunt and I represent the village of Vernon Hills. Today we ask that you reverse the appellate court and the circuit court decisions and remand the case for discovery and a trial on the merits so that the village may have its first opportunity to explore the nature, extent, and causation of Officer Heelan's injury and whether it meets the standard for a catastrophic injury. There are three issues that I intend to address this morning. Due process, conflict among the appellate court districts, and to request that the court revisit the definition of catastrophic injury that it decided nearly a little over a decade ago in Crowley. This case calls upon the court to decide whether a municipality should have any voice whatsoever in determining whether a public safety official has suffered a catastrophic injury and is entitled to placebo benefits or whether, as the appellate court found, the decision of the pension board is binding on that municipality, even though it was not a part of those proceedings. There are different issues involved, both factually and legally. Could you have sought leave to intervene before the pension board? Justice Freeman, it is possible that we could have requested leave to intervene. However, at that point in time, the Richter decision from the second district had not yet been decided. That opinion did not come down for three or four months after the pension board hearing was conducted. At that point in time, no case in this state had ever determined that a village would be bound by a pension board decision to which it is not a party. That simply had never been done. So the village did not know that that's the way the second district was going. It did not have any reason to believe that intervening at that point in time would be the only opportunity that the village might have or that somehow it would be bound in the future, even though it was not a party to those proceedings. I would also add that although a municipality may request leave to intervene, the law in this state as it exists today is that there is no right to intervene. And as such, it is solely within the discretion of the pension board to determine whether or not a municipality is permitted to intervene. The two cases that dealt with those issues, Williams and Stickney, both upheld the decision of the pension board and found that they did not abuse their discretion. One in the instance where intervention was allowed and one where intervention was denied. Sir, you actually were at the hearing, though, weren't you? We did observe. One of the obligations under the pension code is that the village provide a location for the pension board to meet. And at the village of Vernon Hills, there's only one room that has the accommodation to do that in a more formal setting as a boardroom. And so the village manager and I were in attendance. That's correct. We can't get where you want to go without overruling Crowey, can we? I think we can. I think there's – although we've certainly requested that the court revisit Crowey and look at the definition that was decided in that case, we believe that the facts and circumstances of Crowey make this case distinguishable. Let's talk about the definition since you mentioned it. You know, this court has explained in numerous cases that when a statute has been judicially constructed by the highest court having jurisdiction to pass on it, that that construction is as much a part of the statute as if it was plainly written into the original statute. You'd agree with that, right? Certainly. And given that, isn't it correct then that the court's construction in Crowey is now part of the statute? And the legislature, expanding on that, has failed to change the statute in the 12 years since Crowey was issued. However, I would argue that in Crowey, the only thing the court defined was the phrase catastrophic. In Crowey, by the time the case reached this court, there was no dispute as to the existence or the causation of the injury or disability at hand. The phrase that comes from the statute is a catastrophic injury. Not just catastrophic injury, not the plural of it, but a catastrophic injury. And we submit that the legislature specifically used the definite article A to indicate a singular injury. In this case, the facts are such that the disability that was found by the pension board, as according to the doctors that submitted the certificates of disability, was one doctor said it was bilateral hip replacements due to osteoarthritis, which was a preexisting and unrelated condition to any injury in the workplace. Dr. Gleason said he wasn't disabled at all, but that the left hip surgery that was done six months after the right hip surgery was, in fact, not related. And Dr. Jacobs said that he found that there was a disability, but that it was osteoarthritis of the left and right hip. So it sounds like you want to relitigate the line of duty disability aspect of the case. And the reason I say that is we held in CROI that the term catastrophic injury is synonymous with someone who has suffered in an injury resulting in a line of duty disability pension. So back to how what we did now is part of the statute. If we simply replace catastrophic injury in the statute with the CROI definition, the statute now says that the employer shall pay the entire health insurance premium for someone who suffers an injury resulting in a line of duty disability. There's no question that Helan suffered an injury resulting in a line of duty disability. I don't think. Is there? We are not attempting to collaterally attack the pension board decision. So what are we going to litigate in the second action? Well, there are issues regarding there was never any evidence in the record, never any evidence given to the pension board regarding whether the surgery that was required, and all the doctors agree that the reason that Helan was not able to continue his duties as a police officer was because he had bilateral hip replacements. There's no evidence in the record that those surgeries were due to any job-related injury. He tore a muscle when he fell. He had preexisting osteoarthritis, and then they did a right hip replacement. He then goes back to work, and six months later he has left hip replacement. And then for the first time after the left hip, which was never, there's no evidence that he injured it in the fall. It's never been contended that he injured it in the fall. Now for the first time somebody says, gee, we should look at whether or not you can continue this occupation. I would also add that while the court- So what are we going to relitigate in the second action? I think we look at- Whether it was a line of, you said you're not contesting that it was a line of duty disability. What I'm saying is on remand we would go back and we would look at the issues specifically as to whether surgery would have been required anyway. Was surgery required for what happened on the job, or was it for some preexisting and completely unrelated condition that then later on rendered him unable? I would note that neither this court in Crowey nor the legislature ever indicated that by adopting the definition in Crowey or by using the language that was in the act, that it intended to bar a municipality from participating in any way in the determination as to whether or not a person was eligible for benefits. I would also add that a pension board is a creation of the legislature. As such, it derives no common law powers. It has only those powers expressly granted to it by the legislature. And the legislature, when it enacted PSEBA, could have said that it was granting the authority to the pension board to render the determination regarding catastrophic injury or emergency or eligibility for PSEBA, but it did not. And because the legislature did not do that, we believe it's inappropriate for any court to then determine that, based upon a definition, it therefore means that the pension board has that authority when it was not expressly granted by the legislature. I'm missing something. It seems to me either we have to overrule Crowey that said catastrophic injury is synonymous with a line-of-duty disability pension, a finding of that, or we have to find that this was not a line-of-duty disability pension. I don't know where there's something else besides that. Or, well, I believe you can overturn Crowey on that basis, but beyond that, if the court is not prepared to go that far, I believe the court can simply distinguish Crowey where, at the time the case was heard, there was not a dispute as to the causation or the nature or extent of the injury. The only question was whether it was sufficiently severe. And it was a singular injury in Crowey. In this case, we've got something that happened in the workplace in a torn muscle, and then hip replacement surgery that's completely unrelated to the accident itself. There's no evidence in this record that the surgery was required to replace the tear of the muscle or that, in fact, the muscle was even surgically repaired. Mr. Hahn? Yes. I have a problem with the fact that you didn't even try to have a motion to intervene. You were there. You were present. And if there was an issue with regard to other evidence that you just suggest now, you could have done it there. Did you not waive this issue? Judge, we did not. First of all, as I mentioned, Richter had not yet been decided, and so there was no case that had ever bound a municipality with the decision of a pension board where it was not there. Secondly, the first- Had you not ever intervened in any of the other matters that ever came before the pension board? We had not. In fact, this was the first duty-related disability pension application in anyone's recent memory at the village, certainly anyone I was able to speak with. I was actually brought in on this matter the day before the pension hearing, and they wanted to see where things were going. But I would suggest that there was no waiver. I would also suggest to the court that in the Peterson case out of the-I'm sorry, you know, Skraba versus Village of Hoffman Estates out of the First District, the court specifically rejected the waiver argument that somehow by failing to intervene, the municipality waived its right to contest placebo benefits. And so, again, we believe that demonstrates yet another area of conflict between the First District and the Second District in this matter. As the court is aware, when we filed our petition for leave to appeal, we did it both on the constitutional issue and on a split of authority among the districts. The First District and the Second District have gone completely opposite ways. The Second District has expanded CROI and has then said that based solely upon a determination by a pension board of a line-of-duty disability pension, that that necessarily means that the employee's burden under Section 10A has been satisfied. Peterson and Skraba out of the First District specifically reject that view and say that collateral estoppel cannot apply and that because the issues before the pension board are different and because the parties are different, collateral estoppel simply cannot apply. That's in essence what the Second District did in this case. It said it wasn't applying collateral estoppel, and I would then posit the question, well, if they weren't applying collateral estoppel, then what legal doctrine permits a court to bind a party with a decision made by another tribunal to which that litigant was not a party and where the issues are different? The issues in the pension board are whether the injury arises from an active duty. If the court looks at the certificates of disability that were given to the three doctors, one of the two questions that the doctors were asked was, is it medically possible that the disability relates to the injury that occurred on December 10th of 2009? Medically possible. I would suggest that's a far cry from a preponderance of the evidence standard, and it goes to just highlight the nature, the very informal nature of the pension board proceedings that take place in these cases where they're informal by their nature. The rules of evidence do not strictly apply. In this case, the pension board hearing lasted 91 minutes. We did not say in CROI that catastrophic injury is synonymous with the type of injury that might qualify someone for a line of duty disability. That, I think, that's why I keep asking you about what is there to relitigate. I think that, if we had said that, that would leave the village, I think, free to relitigate the question of whether the employee should have received such a pension. But we didn't say that. We said that it was synonymous with receiving a line of duty disability pension, which he did. So if it went back, it would seem to me, even if we sent it back, that the second hearing would be a motion for summary judgment just to show that he had received a line of duty pension. And it seems to be that your argument is that somehow we said it was the type of injury, you know, the causation, the facts. It seems like a relitigation to me of whether or not he should have received a line of duty disability pension, which there's no dispute that he has received. To read from the opinion in Crowley, it indicates that a catastrophic injury, we construe the phrase catastrophic injury as synonymous with an injury resulting in a line of duty pension. And did this not result in a line of duty disability pension? Did not this injury, as looked at, result in a line of duty disability pension? Certainly a line of duty disability pension was awarded by the pension board on what we would contend is a less than complete record. There was no cross-examination of either the applicant or any of the doctors. There were no depositions taken. There was no opportunity for the doctors to be posited with a different set of facts. I think it's important to keep in mind that Mr. Healan told each of his doctors that there was no prior symptoms. He's never had any problems with his hips until he fell on the ice. And yet there was a whole line of officers who were prepared to testify, and we put this in the offer of proof in the trial court. There were a whole line of officers who were prepared to testify that Healan had walked with a limp for many years. There was other evidence that was not presented to the pension board that the village was prepared to present at the trial. So are you saying that there are or could be a group of individuals who are entitled to a line-of-duty disability but are not catastrophically injured? I'm saying that there's a group of individuals who certainly have suffered less than the most severe injuries who may receive a line-of-duty pension, and as we point out in our papers, then are free to go out and pursue other avenues of employment where they're offered insurance from a subsequent employer, as Mr. Healan has been. They receive a salary from a subsequent employer, and in fact are placed in a better position than they would have been had the injury never occurred. And the point of placebo, and I believe what this court viewed in the legislative history, was the fact that placebo was intended to place an injured officer in the same position so that he didn't suffer a loss as a result of that. I think it's also important to keep in mind that right now, given the second district's and that line of cases interpretation under Crowley, that you've got different standards for officers performing the same job. I think it's important that there be a singular process that's defined for making these determinations. It shouldn't depend on which appellate district an officer works in. It shouldn't depend on whether or not the officer works in a town that has less than 5,000 people and is therefore not subject to the pension code, or whether he works for something like a forest preserve district or a sheriff's department or some other entity that's covered by the IMRF as opposed to the police pension code. In those cases, there is no pension board that makes a decision. In those cases, municipalities or the municipal entity is free to litigate the issue or explore the issue regarding the nature and extent of causation. It's only in the second district, as it's come up, that municipalities are foreclosed. In the first district, they're free to do that under Peterson and Oscraba, and there should be a uniform standard that applies in those cases. Mr. Hunt, do the rules of the pension board allow the members to ask questions to cross-examine? They do permit questions, and I think an examination of the record in this case is that there were a few questions asked. There were a handful. Well, the village appoints two members to the board. Now, they're supposed to act fairly and impartially, but did they raise any questions or concerns? I mean, were there any questions? I believe the questions that were posited, there may have been one question from one of the village appointees. Keep in mind that four of the five were present or former police officers and, therefore, present or former co-workers. But any of the other questions that were posited by members of the board were from the other officers that were either elected by the current officers or elected by the annuitants. I see my time is up. Well, just one last question. What was the final vote by the board of the five? I believe it was unanimous. Thank you. Thank you. Good morning. My name is Charles Smith from Waukegan, Illinois, and I have the privilege of representing William Heelan, a disabled police officer, in this matter. Let me begin off my notes by more accurately answering your question that the vote was four to one, and the one dissenting vote was not one of the 40 percent appointed by the village. It was one of the elected members. It was the president of the board, Mr. Price. Thank you. Let me just follow up on what your opponent just talked about. There is a distinction between public employees who are governed by local pension boards and those who are not. Does that really create an absurd result? Absolutely not, Justice Freeman, and one of my concerns with the village's argument in their briefs and before this court is they're asking this court to take over the legislative function that belongs to the General Assembly. Certainly, the General Assembly should be aware that they have set up different rules, but in their brief, the village argues for a unified system for determining pensions across the state. That may well be a good idea. Perhaps we should have impartial panels appointed by the governor or with medical doctors, et cetera. That is not a function, respectfully, for this court, to unify how the Illinois State Police administers disabilities, how cities and towns under the municipal code do it, how the county does it under the county. For the village to ask this court to write a unified system by way of a judicial edict, I respectfully suggest would violate the separation of powers, and the system is well known to the legislature, and Justice Thomas pointed out it hasn't the legislature ever written into the legislation the decision in Crowley, and I would say affirmatively very much so. Not only that, we know that the legislature has made amendments to the disability statutes since Crowley was decided in 2003. So the legislature is well aware of this. The court is well aware because this is not the first time the court has heard challenges to Crowley since the court decided the case in 2003. In 2010 and 2011, you had the Gaffney and the Nowak cases that came before this court, and the court reaffirmed its holding in Crowley in both of those cases, and not too surprisingly, the same amicus who have authored briefs in this case were there in Crowley, were there in Nowak, and were there in Gaffney, and are here again today. The message is very clear. The Illinois Municipal League and the villages and towns don't like the decision in Crowley, and I respectfully suggest that if that is their position, which it clearly is, their remedy is with the Illinois General Assembly, not with this court to keep bringing back the same argument that they don't like the definition of catastrophic injury is synonymous with plaintiff duty disability. Is it a problem that they had no opportunity to be heard? Thank you, Chief Justice Garment. That is where I want to start. They had the opportunity. I think the village tries to craft an argument that under Stickney they didn't have a right. They certainly had, and when you look at the due process cases they cite, most of those due process cases talk about the opportunity, and clearly the village had the opportunity. I was there, Mr. Hunt was there, the village administrator was there, and I started the argument, and in the record you will find that the court reporter took note of both the presence of the village administrator and the village attorney, and in my first remarks before the board I said the village has not sought leave to intervene. Clearly the village could have said, well, we'd like to, and they have done it in another case, and it is part of the, I think some of the arguments, Mr. Hunt, go beyond the record, but it is clearly in the record that in another case, Sosnowski, before the pension board, the village did seek leave to intervene. So the village tries to hang their hat on the fact that, well, Stickney said that the village doesn't have a right, and Stickney, let us remember, the village did seek leave to intervene, and subsequent to Stickney, a more recent case, 2010, is Williams, which I cite several times in my brief because I think it's important for several points. One of the points in Williams is that they have a, that the board has discretion, but they should exercise it cautiously, and the opinion speaks of the economic impact to the village, since the village is the largest contributor to the pension fund, that they should have a right or the opportunity under certain circumstances to participate. The village was there and did not. I point out in my brief. In this case, should this court decide the issue as to intervention? Is that part of this case that this court needs to resolve? I certainly wouldn't have any objection to that because I had no objection. I also represented Sosnowski, and I had no objection to Mr. Hunt and the village intervening in that case, although I will say, candidly, it made a much longer case, a much more difficult case, but I don't think that's a concern of the court, that if they want to intervene. I don't know how this case presents itself. Since the village did not take any affirmative steps, how the court has the jurisdiction to say, maybe in dicta you could say we certainly encourage the police pension boards to allow the village to participate in these type of hearings, and we strongly encourage the village to do that instead of having what we have, what has been created in this case. My client is a disabled police officer with a wife and two minor children. The village has had this case, his injury was 2009. His disability hearing was in 2013. We're now in 2015, and we're still fighting over whether he has disability health insurance for his family. I misspoke on my timeline. The application for disability was made in 2010. The hearing was June 28th of 2011. The ruling was August of 2011. The village filed its declaratory judgment in September 2011, and here we are in May of 2015, and this police officer with two dependent children and a wife still does not have his health benefits that the legislature intended that he would have. I would point out that I don't think that under the way this case has evolved, that issue is real because the pension board never denied the village the opportunity to speak. I want to return for a second to what the village did in this case that I find undercuts a lot of their argument. One of them says they never had a chance or the opportunity to speak on the issue of disability. I would point out to this court in the record that the village paid my client for one year benefits under the Public Employee Disability Act, affectionately referred to as PETA. Now, when they say, and Mr. Hunt argues before this court, we never got the chance to say that his disability was not related to work or that he was in fact disabled. I would urge by this court, it is somewhat disingenuous to pay a man a year's salary and benefits as required by PETA, which happens to public employees who are disabled. So the village has acknowledged a disability. Now, I would not take that so far to say that they acknowledge that he's a lifetime disabled person, but when they awarded the PETA benefits for a year, if my client in December of 2009, instead of responding to an emergency alarm, had been putting up Christmas decorations and fell and sustained the same injury, we may have had a party for him and said, good luck, we're sorry about your disability, but he would have received a 50% disability and he would not have received any health benefits and he wouldn't have been entitled to it. The village has acknowledged, in my position, his disability by paying him PETA. Not only that, they paid a workman's compensation settlement based on total disability. So when the village comes before the trial court, the appellate court, and this court, and says we never got the bat on the disability issue, I would respectfully disagree. And I would respectfully point out that they had the opportunity. And I would further point out that their opportunity was not only on that day when we started this hearing back in 2011, when they were there, that after the board reached its decision, pursuant to the holding in the Village of Old Park versus the Old Park Firefighters Pension, they could have come in at that time within 30 days of the board's decision and say, excuse me, I think you got it wrong. We have an interest here. We think you got it wrong. That's what was allowed in that case. Of course, I don't want to rule that they could have, under Williams, sought to intervene at the very start of the case. Even after the board lost jurisdiction 30 days after its ruling, within that 30-day timeframe, the final written decision was adopted in late August, August 24th of 2011. Village filed a declaratory judgment on September 22, 2011. Within the 35 days that they could have filed a complaint for administrative review. And you may question, well, where's the authority to do that since they weren't before? Well, the authority to do that is in Belleville versus Carp. It's a 2002 case that really predates Crowley, that in that case, they said because the village had an economic interest in how this was calculated, they had a right to come into and file an administrative review. So the village had the right, the opportunity, under Williams to come in at the hearing. The village had the opportunity to seek to have the pension board reconsider its ruling under Oak Park versus Oak Park Firefighters. And the village had the right, under Carp's, to come in and seek administrative review. They chose instead an avenue that is going to be, which has been, extremely expensive for the disabled police officer and his family. Using their enormous economic resources, we're now, as I pointed out, five years down the road almost from the day that the disability hearing was held. And he still doesn't have his health insurance. Is it your position that even if they had sought leave to intervene before the pension board hearing and been denied that opportunity, they would still have the right to pursue the administrative review? I think under Carp's they would have. And I think the decision at that point as to not allowing them would have been a matter of review by the circuit court whether they abused their discretion. Again, I think Williams is very instructive on this issue, and also I think Williams is one of Mr. Hunt's other arguments was, well, all they had to do was, all the petitioner for the application of disability, Mr. Healy had to do, was agree to a few depositions. The court has seen the 2,000-page offer of proof, the type of trial that we would be visiting upon our disabled police and fire officers if the village's line of thought is followed. They bring many things before this court. They're not in the record and say, well, we've got guys who would testify that he had a limp. I can assure this court I have people who would testify otherwise. But the expense to a disabled police officer of having to take, let's start with the three doctors appointed by the board to examine, the enormous expense of paying for evidence depositions of those doctors or bringing them into trial to bring in the witnesses. The Williams case, again, I think is very instructive as to what the type of hearing the administrative process is. And it does allow for relaxed rules of evidence if it's reliable. Now, this court has heard many cases of police disability pensions. And you note in this court's rulings and lower court rulings, a litany of doctor's testimony. It is routinely stipulated to. When counsel makes light of the amount of time that was expended at the actual hearing, I think he does a disservice to the five citizens who serve on the police pension board who reviewed a 435-page record of exhibits in order to be ready for the hearing and who did question the applicant and, more importantly, who questioned Dr. Gleason. The attorney for the board and I were able to agree on the exhibits with extensive work, which the board took the time to review in advance, and there were questions. So we had Dr. Gleason available by phone. Now, I suppose if we're going to have a declaratory judgment action, as the village wants, we're not going to have that luxury. And I think it's extremely unfair to a disabled police officer to have to try and find the resources to be able to afford that sort of legal fight against a well-financed opponent. And as the trial court pointed out to me when I made that argument there, Judge Mullins said, Mr. Smith, you've been up against well-financed opposition before. Don't come crying to me about that. And, yes, I have to accept that. But I think it's important for me because what we're here about is a matter of public policy. And I would strongly urge upon this court that the village's due process argument, that they had no right to intervene and they didn't get their chance, is really specious, that they had right opportunity, due process. They had the opportunity. They decided to pass on it. Now they say, well, things would have been different. And even in Mr. Hunt's argument here today, it's urgent upon this court what they could put forth in response to Justice Thomas's questions. What happens if we send this back? What are you going to do then? Because just as in the declaratory judgment trial, in spite of the 2,000-page offer of proof that was there, the trial took an hour, took less time than the, because really, as Judge Mullin, the issue is very clear. Under A, and she had already ruled, that under Part A of the disability, the pension board's finding, as Justice Thomas has pointed out, that resolves the issue of whether he's disabled. Now let's get on to whether this was an emergency. And when I return to my cost issue to the poor applicant here, we had to do three depositions. And on the day of trial, on the day of trial, they stipulated that, yes, this was responding to an emergency. When the flash card on his computer, his card said emergency. But they waited until the day of trial to say, let me, as my time draws close here, just sum up by urging upon this court that this is nothing more than another attempt, the fourth in 12 years, to third review, since Crowey was decided in 2003. For the fourth time, a municipality has returned to this court and said, we really don't like Crowey. And I don't know at what point this court says, like it or not, that's the law, please follow it. And to suggest that my client should have to wait five years and go through trial court, appellate court, Supreme Court, and now what the bill says, give us a chance to do what we could have done under Williams back when this all started. On behalf of my client, I appreciate the time before this court and your consideration. If there are no other questions from the justices. There don't appear to be. Thank you. I'd like to briefly address some of the points raised by counsel on behalf of Mr. Healy. And I would start by pointing out that an awful lot of their argument and an awful lot of their brief is devoted to a discussion of how expensive this process would be if the village's view is adopted. And the fact of the matter is, we submit that expense should never be a justification for skirting due process. The village had due process rights in the circuit court. The village availed itself to the declaratory judgment statute in the Code of Civil Procedure because there was a disagreement between two parties. That is another appropriate avenue for the village to have pursued. Contrary to counsel's arguments, we are not requesting that this court somehow usurp the legislative function or overrule the legislature or circumvent it by crafting your own uniform system. The fact of the matter is, it's very simple for this court to do within the confines of the issues presented here today. And that is to simply rule that a village may not be, a municipality may not be bound by a pension board decision to which it was not a party. That simply then allows the village or any municipality to pursue that. It puts all officers across the state on equal footing. It puts all municipal entities on equal footing. Just like the court, the second district, said in the Phelan case involving a McHenry County Sheriff's deputy, in that case they noted that specifically there was no available pension board to look at their decision and therefore they had to craft their own test for catastrophic injury and whether or not that officer met those burdens. So we don't need to usurp the legislature. All we need to do is follow due process and specifically rule that a village or a municipality cannot be collaterally stopped or somehow bound by the pension board ruling. Counsel has repeatedly said it's that municipalities don't like crowing. It's not a question of liking or not liking a decision. It's a question of the fact that what courts have done with the crowing definition and where it has taken this. In fact, one of the cases that's not in either side's brief was decided three weeks ago by the second district in which they not only followed Richter and Heeling, but they also went a step further in a case called Bremer against I believe it was the city of Rockford in which the court then said not only does a pension board ruling satisfy 10A for purposes with respect to a line of duty disability pension, but if it's an occupational disease disability pension we can look at what the pension board did and that forecloses any opportunity as well. So the second district has really taken the crowing definition two or three steps beyond what we believe certainly the legislature intended or what this court intended in reaching crowing. I would also add that the specific sponsor of the PSEVA statute, Senator Laura Kent Donahue who is now a city clerk in Quincy I believe, has given several interviews since then specifically stating that that's not what the legislature was thinking that would apply to anybody who simply got the pension. Council makes a big point of arguing about well we could have intervened, we should have sought leave to intervene and I know a number of the justices asked those questions during our principal argument. The fact of the matter is, and this is in the record, it's in our reply brief, it's in other places in the case below, there have been three instances in the village of Vernon Hills in which officers have sought line of duty disability pensions. The first case was Elan. The village did not seek to intervene. The second case was Officer Sosnowski in which we did seek to intervene and without objection were granted that ability. We don't know what would have happened in that case had there been an objection. But we do know in the third case, Briscoe, who's in the courtroom here today, that we moved to intervene in a timely fashion months before the pension board actually took place and the pension board denied the request because they didn't want to go through a lengthy and exhaustive hearing. And so as long as pension boards have the discretion to grant or deny intervention, it seems to me that the only avenue in order to protect a village's or municipality's due process rights is to ensure that they can avail themselves to what the legislature created when it specifically authorized the filing of a declaratory judgment action. The impact of a decision simply saying that if you don't intervene or pursue those remedies or pursue administrative review, which I'll discuss in a moment briefly, that somehow it's been waived or that the village is bound by those results. The impact of that is to require, as in essence the second district has now done, that a village seek to intervene in each and every disability pension matter. Which means those cases are going to be heard. The municipalities are going to file those requests. They're going to go forward. They're going to seek leave to intervene. And if it's denied or if it's granted and there's another decision that comes out, then there's going to be requests for administrative review. I would respectfully suggest to you that the circuit court is a better venue for hearing the complex issues that come out in these situations than would be a pension board, which is almost universally populated by lay people who are elected from their fellow officers, elected from annuitants, or who are political appointments of the mayor. The circuit court has a framework that's better suited to handle these issues. There are the rules of evidence. There are the rules of civil procedure. And the rules are there to guarantee that both sides are afforded their due process rights. Those same guarantees don't exist in the pension board context. Council argues that there was a workers' compensation finding that was made. I would point out, as we did in our briefs, the workers' compensation lump sum settlement contract specifically said, and by the way, it was signed by Mr. Heelan himself, specifically said, that that contract was not binding in any other proceeding. It could not be used as evidence of his disability in any other proceeding. And yet today they come and they argue that somehow it can be. Similarly, PETA, the Public Employee Disability Act, in essence, is a supplement to workers' compensation. The workers' compensation employee gets two-thirds of their weekly salary. Under PETA, for a period of one year, they get a supplement paid by the village. It's not an admission that somehow the person is disabled. Any public employee who was injured in the job is going to be eligible for those benefits. Council indicated that we should somehow have pursued administrative review, citing CARFs. A careful analysis of CARFs specifically will show that in CARFs, the court was careful to say that just because you fund the pension doesn't mean you have a right to administrative review. The court said it had to be something more than that. It had to be a situation where, as in CARFs, there was a fundamental error in the formula that was used in the pension board. So it's not enough to simply be writing checks to fund the pension every year. So I would submit that under CARFs, the village did not have the ability to seek administrative review of the pension board's decision in this matter because there was no indication of anything in that decision that would have risen to the level that CARFs provided. In short, we think that the circuit court is the better venue to handle these issues. We invite the court to revisit CROI in light of the way that it has been interpreted by the appellate courts. At the very least, the court needs to ensure that the due process rights of all parties are protected and that the village cannot be bound within the constraints of due process, as announced in Park Lane and Blondertongue and, in fact, in this court's decision in Van Milligan. That simply you're going to bind a village based upon a decision by another entity in another forum to which the village was not a party that considered different issues. It is fundamentally unfair to do so, and we ask that you reverse the appellate court and the circuit court and remand the case for a full hearing on the merits. Thank you. Thank you. In case number 118170, the village of Vernon Hills v. William J. Healan will be taken under advisement as agenda number 18. Mr. Hunt and Mr. Smith, thank you very much for your arguments this morning, you're excused at this time.